**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

**TIMOTHY L. ASHFORD,**
**TIMOTHY L. ASHFORD, P.C.L.L.O.,**

**Plaintiff,**

**v.**

**HON. Jeffrey J. Funke, Chief Justice of the Nebraska Supreme Court in his official capacity and his individual capacity;**

**HON. Stephanie F. Stacy, Justice of the Nebraska Supreme Court in her official capacity and her individual capacity;**

**HON. Derek R. Vaughn, Justice of the Nebraska Supreme Court in his official capacity and his individual capacity;**

**HON. William B. Cassel, Justice of the Nebraska Supreme Court in his official capacity and his individual capacity;**

**HON. Jonathan J. Papik, Justice of the Nebraska Supreme Court in his official capacity and his individual capacity;**

**HON. Jason M. Bergevin, Justice of the Nebraska Supreme Court in his official capacity and his individual capacity;**

**HON. John R. Freudenberg, Justice of the Nebraska Supreme Court in his official capacity**

**Case No. 8:26-CV-356**

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**and his individual capacity;**

**Mark A. Weber,**
**Counsel for Discipline of the**
**Nebraska Supreme Court,**
**in his official capacity**
**and his individual capacity;**

**Kent Frobish,**
**Assistant Counsel for Discipline of**
**the Nebraska Supreme Court,**
**in his official capacity**
**and his individual capacity;**

**Jarrod S. Boitnott,**
**Assistant Counsel for Discipline of**
**the Nebraska Supreme Court,**
**in his official capacity**
**and his individual capacity;**

**State of Nebraska,**

**John Does, 1-100,**

**Jane Does, 1-100**

**Real Name Unknown, 1-100**

**Defendants.**

## Introduction

Plaintiffs Timothy L. Ashford and Timothy L. Ashford, P.C.L.L.O. (collectively referred to as "Ashford" or "Plaintiffs") have brought this action seeking damages and injunctive relief for numerous alleged constitutional violations arising out of the investigation of two attorney discipline complaints that were dismissed after investigation. Ashford was never disciplined for any of the complaints. Despite

never being formally charged and never being disciplined, Ashford has sued the State of Nebraska, all current Nebraska Supreme Court Justices, and members of the Office of Counsel for Discipline.

The First Amended Complaint is an amalgamation of disparate facts and cl an assortment of claims. Defendants have moved to dismiss the Complaint for many reasons, including, but not limited to, lack of Article III standing, quasi-judicial immunity, prosecutorial immunity, legislative immunity, qualified immunity, and Eleventh Amendment sovereign immunity for monetary damages. For the reasons explained below, Defendants respectfully request the Court to grant this motion and to dismiss the Complaint with prejudice.

## Background

This is at least the sixth in a series of meritless lawsuits filed by Ashford related to the investigation of two bar complaints that were ultimately dismissed without any formal charges being filed or any discipline being imposed. Ashford refers to many of these lawsuits in this case. Those cases are:

- On April 29, 2019, Ashford filed *Timothy Ashford, et al., v. Office for Counsel for Discipline*, Douglas County District Court, CI 19-3445. Ashford sought declaratory and injunctive relief related to the investigation of an October 3, 2016, bar complaint. The District Court dismissed the lawsuit on sovereign immunity grounds.

- On June 4, 2019, while his Douglas County District Court, Ashford filed a similar lawsuit in the United States District Court for the District of Nebraska in *Timothy Ashford, et al., v. Office for Counsel for Discipline*, No. 8:19-CV-243, 2019 WL 2371662 (D. Neb. June 5, 2019). There, Ashford sought declaratory and injunctive relief with respect to attorney disciplinary proceedings Ashford alleged were undertaken by the Counsel for Discipline following the October 3, 2016, bar complaint. *Id.* at *1. The next day, Judge Gerrard dismissed *sua sponte* Ashford's complaint based on *Younger* abstention. *Id.* at *2. The Eighth Circuit affirmed the District Court's decision.

- On November 22, 2019, Ashford filed *Timothy Ashford, et al., v. Marcena Hendrix, et al.*, Douglas County District Court, CI 19-9165, seeking damages related to the October 3, 2016, bar complaint and the underlying state court matter that Ashford alleges is related to that bar complaint. The District Court dismissed the lawsuit on various grounds.

- On January 21, 2020, Ashford filed a fourth lawsuit. He filed *Timothy L. Ashford, et al. v. Marcus Hendrix, et al.* in the United States District Court for the District of Nebraska entitled *Timothy Ashford, et al. v. Marcus Hendrix, et al.*, No. 8:20-CV-36. The Court granted the Defendants' motion to dismiss on various immunities grounds.

- On July 21, 2026, Ashford filed a fifth lawsuit in Lancaster County District Court entitled *Timothy Ashford, et al. v. Funke, et al.*, CI 26-2746,

a case virtually identical to this case. Defendants have removed that case to federal court.

- Finally, Ashford filed this case in federal court.

Unlike the first four lawsuits, Ashford has expanded the defendants in this lawsuit. He has named all the current Nebraska Supreme Court Justices (collectively referred to as "the Justices") and attorneys—Mark A. Weber, Kent Frobish, and Jarrod S. Boitnott (collectively "Counsel for Discipline Defendants")—in the Office of Counsel for Discipline ("Office of Discipline"). Ashford also named the State of Nebraska as a defendant.

This lawsuit challenges the Office of Discipline's investigation into two bar complaints involving Ashford. The first complaint was filed on October 3, 2016, which was the focus of much of the prior litigation. And the second bar complaint was filed later. In the prior cases, the investigation of the bar complaints was ongoing. But the status of both complaints has changed from pending to dismissed. The Office of Discipline dismissed the October 3, 2016, bar complaint on October 4, 2022. Filing 2 at ¶ 78. And the Office of Discipline dismissed the second complaint on July 23, 2024. Filing 2 at ¶ 83. The Office did not file a complaint or formal charges against Ashford on either bar complaint. As a result, Ashford has never been formally charged or disciplined for either grievance.

Ashford correctly points out that the investigations of the two bar complaints took about eight years to complete. Filing 2 at ¶ 66. The ODC originally

investigated the bar complaints. But, as Ashford notes, former judge Teresa Luther was subsequently appointed as special prosecutor to investigate the October 4, 2016, complaint. Filing 2 at ¶ 77. On October 2, 2022, according to Ashford, Judge Luther dismissed the complaint against Ashford, stating as follows:

> The first matter was under investigation to determine whether you charged or collected an unreasonable fee contrary to Neb. Ct. R. of Prof. Cond. § 3-501.5(a). Judge Hendrix determined that your fees in the case were not fair and reasonable and therefore ordered you to refund $8,265 to the ward's estate. You filed multiple appeals regarding the issue of your fees; however, none of your appeals were determined on the merits. Because of the multiple appeals, counsel for discipline, and later myself, waited for a resolution of the case before we concluded our investigations. After my independent review of the propriety of your fees in the Brown case (PR 14 1483), I have determined that there is not clear and convincing evidence that you violated § 3-501.5(a). Therefore, I have today (October 4, 2020) dismissed the investigation pursuant to Nebraska court rule § 3-309(C).

Filing 2 at ¶ 78.

In other words, Judge Luther explained why the investigation took so long: Ashford's multiple appeals of Judge Hendrix's ruling delayed the investigation because both the ODC and Judge Luther waited for resolution of Ashford's appeals on the merits before concluding their investigations. Ashford's multiple appeals of the underlying court order was, at least, a significant contributing factor in the delay in the resolution of the two bar complaints.

## Legal Standards for Granting Motion to Dismiss

A complaint in federal court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss may be granted when the plaintiff has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Nor is a court required to accept plaintiff's "legal conclusions drawn from the facts." *Peters*, 793 F.Supp.3d at 1053 (quoting *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021)). What is more, a court is not required to "wait to see if more specific information becomes available through the discovery process to decide if a plaintiff' can state a claim." *Peters*, 793 F.Supp.3d at 1053.

"[L]egal conclusions" and "threadbare recitations of the elements of a cause of action supported by mere conclusory statements" are not entitled to a presumption of truth when considering the sufficiency of a complaint." *Zink v. Lombardi*, 783

F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). The factual allegations asserted in the complaint must be "sufficient to raise a right to relief above the speculative level." *McDonough v. Anoka Cnty.*, 799 F.3d 931, 946 (8th Cir. 2015) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

"When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014)).

## Argument

### I. Plaintiffs lack Article III standing.

Article III of the Constitution limits the jurisdiction of federal courts to deciding only "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. "A case or controversy must be present at the beginning of a lawsuit and must continue throughout." *Brazil v. Arkansas Dept. of Human Services*, 892 F.3d 957, 958 (8th Cir. 2018). Lack of Article III standing that arises after the filing of a lawsuit is called mootness. *McNaught v. Nolen,* 76 F.4th 764, 769 (8th Cir. 2023) ("The difference between standing and mootness … is merely one of time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).") In other words, standing and mootness are opposite sides of the same coin.

To establish standing to sue in federal court, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

An attorney may allege an injury in fact if there is a pending investigation of a disciplinary complaint; however, an attorney may not allege an injury in fact if a

disciplinary complaint has been dismissed. *K v. Complaints Committee of Mississippi State*, 618 F.Supp. 306, 311 (S.D. Mississippi 1985) (holding that an attorney had an alleged an injury in fact at the beginning of the case when a bar complaint was being investigated, but the case became moot when the disciplinary complaint was dismissed after the lawsuit had started). "The controversy between the parties in the instant case, and thus the threat of injury to the Plaintiff, terminated when the complaint filed with the Mississippi State Bar against Plaintiff was dismissed." *Complaints Committee*, 618 F.Supp. at 311.

Ashford has not alleged an injury in fact. There are not any disciplinary complaints pending against him. The two disciplinary complaints that are the subject of this lawsuit were dismissed long before this lawsuit was filed. The first complaint was dismissed on October 4, 2022. Filing 2 at ¶ 78. And the second complaint was dismissed on July 23, 2024. Filing 2 at ¶ 83. Nor has Ashford alleged that another bar complaint is imminent. Simply put, Ashford has not alleged that he is presently being investigated for any alleged ethical violations and has therefore not alleged a concrete and imminent harm sufficient to create an injury in fact.

Ashford may argue that he has established an injury in fact because he has experienced a loss in his ability to practice laws due to the Defendants' actions. Ashford may have alleged an injury fact to this ability to practice law while the two bar complaints were being investigated. But that injury evaporated when the

complaints were dismissed and no disciplinary action was taken against his law license.

In conclusion, Plaintiffs lack Article III standing because they have not alleged an injury in fact. The District Court should therefore dismiss this case.

**II. Plaintiffs' claims against the Counsel for Discipline Defendants are barred by quasi-judicial immunity.**

Ashford seeks monetary relief against the Individual Defendants in their individual capacities. But the Individual Defendants are entitled to quasi-judicial immunity and bars Plaintiffs' claims against them.

Judicial immunity extends to individuals who perform functions closely associated with the judicial process. *Cleavinger v. Saxner*, 747 U.S. 193, 200 (1985). "Persons who perform quasi-judicial functions are entitled to absolute immunity." *VanHorn v. Oelsschlager*, 457 F.3d 844, 847 (8th Cir. 2006) (quoting *Dunham v. Wadley*, 195 F.3d 1007, 1010 (8th Cir. 1999)). Absolute immunity "is appropriate," according to the Eighth Circuit, "when an official's functions are similar to those involved in the judicial process, an official's actions are likely to result in lawsuits for damages by disappointed parties, and sufficient safeguards exist in the regulatory framework to control unconstitutional conduct." *Dunham v. Wadley*, 195 F.3d at 1010 (internal citations omitted). Absolute immunity is not overcome by allegations of bad faith or malice. *Mireless v. Waco*, 502 U.S. 9, 11-12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).

When deciding whether an individual is entitled to immunity, an individual's status, such as a judge, is not determinative. "Rather, [t]he touchstone for the doctrine's applicability has been 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Moore v. Yardely*, 376 F.Supp.3d 1004, 1009 (D. Nebraska 2019) (citation modified). In other words, "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988) (emphasis in original). "To determine which persons are covered under quasi-judicial immunity, courts employ a functional approach under which absolute immunity flows not from rank or title or location within the government, but from the nature of the responsibilities of the individual officer." *Simes v. Arkansas Judicial Discipline and Disability Comm'n*, Case No. 4:100cv01047, 2012 WL 4469264 at * 7 (E.D. Arkansas September 27, 2012).

An individual's entitlement to quasi-judicial immunity depends on these factors:

> (a) the need to assure that the individual can perform his [or her] functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal."

*Buser v. Raymond*, 476 F.3d 565, 568 (8th Cir. 2007) (quoting *Krueger v. Lyng*, 4 F.3d 653, 656 (8th Cir. 1993).

When these factors are applied here, it is evident that the Individual Defendants are performing judicial functions and therefore entitled to quasi-judicial immunity for the reasons explained below.

The first factor—the need to assure that the individual can perform their job functions without harassment or intimidation—weighs in favor of quasi-judicial immunity. Attorneys representing the Office of Discipline need immunity so that they can perform their job without harassment and intimidation by attorneys being investigated and prosecuted for violations of attorney disciplinary rules. One doesn't have to look any further than Ashford as an example of the type of harassment and intimidation disciplinary counsel experience. Ashford has filed six lawsuits against various defendants. Those lawsuits are exemplars of vexatious litigation designed to intimidate and harass disciplinary authorities.

Second, the attorney disciplinary process includes safeguards that reduce the need for private damages actions as a means of controlling unconstitutional behavior. The Office of Discipline is unable to unilaterally impose discipline on attorneys. Rather, there is a system of checks and balances designed to ensure that responsible decisions are made. The first step is that a District Committee on Inquiry reviews each complaint and determines if there are reasonable grounds for discipline and either dismisses the complaint or have the Office of Discipline prepare and file a formal charge. Neb. R. Ct. §3-309. If a formal charge is filed, then the matter is referred to a referee who will conduct an evidentiary hearing and will issue a written report stating his or her findings of fact and recommendations. Neb.

R. Ct. § 3-310. If either party disagrees with the referee's report, they may file exceptions to the written report. Should any party file exceptions to the referee's report, the Nebraska Supreme Court will hear and decide the case. Neb. R. Ct. § 3-310. When deciding the case, the Supreme Court "may disbar, suspend, censure, or reprimand" the attorney, or take "such other action as the Court deems appropriate." Neb. R. Ct. § 3-310.

The third factor—insultation from political influence—also weighs in favor of providing quasi-judicial immunity. The attorney disciplinary process is designed to decide each case on its merits, free from outside influences. Up until the matter is set for hearing before the Supreme Court, the disciplinary process is confidential. A confidential process lessens the possibility of political influence. A public hearing before the Supreme Court helps insulate the decision-making process from political influence. A public hearing and public decision lessen the possibility of political influence because the Supreme Court will have to issue a public decision with the reasons for the decision substantiated.

Fourth, precedent plays an important role in the attorney discipline process. Precedent plays an important role in the proceedings before the Supreme Court. This factor weighs in favor of quasi-judicial immunity.

Next, the adversarial nature of the attorney-disciplinary process weighs in favor of quasi-judicial immunity. At the hearing before the referee, each party may be represented by counsel, may present evidence, may call witnesses, and may present argument. On appeal to the Nebraska Supreme Court, the parties may be

represented by lawyers, may submit a brief, and may present oral argument. Put simply, the hearing before the referee is like a trial court and the appeal to the Supreme Court is like an appellate matter.

Finally, the Supreme Court can correct any error when it decides the case. This factor weighs in favor of quasi-immunity.

In conclusion, the Counsel for Discipline Defendants perform judicial functions as part of their job duties as part of the attorney disciplinary process. They are thereby entitled to quasi-judicial immunity, and the Court ought to dismiss Plaintiffs' claims against them.

### III. Plaintiffs' claims against the Counsel for Discipline Defendants are barred by prosecutorial immunity.

Ashford seeks monetary relief against the Counsel for Discipline Defendants in their individual capacities. But they are entitled to prosecutorial immunity.

"Prosecutors are protected by absolute immunity from civil liability under § 1983 for prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process." *Anderson v. Larson*, 327 F.3d 762, 768 (8th Cir. 2003). *See also Buckley v. Fitzsimmons*, 509 U.S. 259, 268-71 (1993); *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996).

Prosecutorial immunity is not limited to prosecutors in criminal cases but extends to government officials who perform prosecutorial functions. *Butz v.*

*Economou*, 438 U.S. 478, 511 (1978). Prosecutorial immunity extends to "bar officials charged with the duties of investigating, drawing up, and presenting cases involving attorney discipline." *Stein v. Disciplinary Bd. of Supreme Court of New Mexico*, 520 F.3d 1183, 1194 (10th Cir. 2008); *see also Hirsh v. Justices of Supreme Court of Cal.*, 67 F.3d 708, 715 (9th Cir. 1995); *Price v. Law Firm of Edwin Shorty, Jr.*, Case No. 14-1832, 2014 WL 7240157 at *2 (E.D. Louisiana December 18, 2014) (Attorney discipline counsel entitled to absolute prosecutorial immunity). Attorney discipline counsel are functioning as a prosecutor when making screening decisions or prosecution decisions. *Workman v. Calogero*, 174 Fed.Appx. 824, 826 (5th Cir. 2006) (per curiam) (decisions by a prosecutor to file or not file charges are prosecutorial acts entitled to absolute immunity).

In this case, the Office of Discipline Defendants' decisions related to whether they should proceed with a charge or dismiss the case are equivalent to a prosecutor's decision to file or not file criminal charges. As a result, the Office of Discipline Defendants are entitled to absolute prosecutorial immunity.

## IV. The Justices are entitled to absolute legislative immunity for any claims for monetary damages and equitable relief related to the promulgation of attorney disciplinary rules.

Ashford alleges that the attorney-discipline process established by the Nebraska Supreme Court violates the constitutional separation of powers by the eight-year investigation of the two bar complaints against Ashford. Filing 2 at ¶ 39. To the extent Plaintiffs' claims involve a challenge to the attorney-discipline system

promulgated by the Supreme Court, absolute legislative immunity bars those claims.

State supreme courts are absolutely immune from claims related to promulgating attorney disciplinary rules. *Supreme Court of Virgina v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 734 (1980); *Anonymous v. Kaye*, 987 F. Supp. 131, 135 (N.D.N.Y. 1997) (concluding that "judges are entitled to absolute legislative immunity for actions relating to the promulgation of disciplinary rules.); *File v. Martin*, 33 F.4th 385, 390 (7th Cir. 2022) (holding Wisconsin Supreme Court "justices enjoy immunity from suits challenging the exercise of their legislative power to draft and promulgate rules regulating the legal profession."); *McFarland v. Folsom*, 854 F. Supp. 862, 875 (M.D. Ala. 1994) (concluding that "the individual justices of the Alabama Supreme Court, and the members of the Alabama State Bar and Board of Bar Examiners are all entitled to absolute legislative immunity as to all claims for damages against them for their respective roles in promulgating the *Rules Governing Admission to the Alabama State Bar*."); *Ziankovich v. Members of Colorado Supreme Ct.*, No. 20-CV-0158-WJM-SKC, 2020 WL 4539625, at *8 (D. Colo. Aug. 6, 2020), aff'd, No. 20-1314, 2021 WL 4047000 (10th Cir. Aug. 10, 2021) (concluding that, in "promulgating disciplinary rules, Colo. RPC, and/or C.R.C.P., the Court finds that the members of the Colorado Supreme Court are protected by legislative immunity.").

Without any dispute whatsoever, the Nebraska Supreme Court was exercising its legislative power to draft and promulgate rules regulating the

attorney discipline system. So the Supreme Court Justices are entitled to absolute legislative immunity.

**V. The Eleventh Amendment bars Plaintiffs' claims for monetary damages against the Defendants in their official capacities.**

In this case, Ashford seeks monetary damages from the Defendants in their official capacities and against the State of Nebraska. The Amended Complaint alleges that the Defendants are state employees and that they are being sued in the official capacities.

The Eleventh Amendment to the United States Constitution bars claims for damages by private parties against a state, state instrumentalities, and employee of a state sued in the employee's official capacity. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 536 U.S. 613, 616 (2002) ("The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other states … and by its own citizens as well.)); *Dover v. Elevator Co. v. Arkansas State University*, 64 F.3d 442, 446-47 (8th Cir. 1995); *Krei v. Nebraska*, 446 F.Supp.3d 499, 509-10 (D. Nebraska 2020); *Weathers v. Shaeffer*, 255 F.Supp.3d 921, 924 (D. Nebraska 2017); *Moore v. Yardely*, 376 F.Supp.3d 1004, 1008 (D. Nebraska 2019); *Cohen v. Nebraska Dept. of Administrative Services, Div. of Central Data Processing*, 83 F.Supp.2d 1042, 1046 (D. Nebraska 2000). Any award of retroactive monetary relief payable by the state, including damages, is prohibited by the Eleventh Amendment, absent a waiver of immunity by the state or an override of immunity by Congress. *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981).

## VI. Plaintiffs' request for prospective injunctive relief is barred by sovereign immunity.

Ashford is asking the Court to "[e]join Defendants from engaging in any further illegal actions against the Plaintiff." (Doc. 2 at 34 ¶ 137(d)). This is a request for prospective injunctive relief. While prospective injunctive relief is an exception to sovereign immunity, sovereign immunity nevertheless bars the injunctive relief sought in this case.

Under the exception to sovereign immunity established in *Ex parte Young*, "a private party may sue state officials in their official capacities for prospective injunctive relief." *Smith v. Reynolds*, 139 F.4th 631, 635 (8th Cir. 2025). *Ex parte Young* is a "narrow exception" to sovereign immunity, however. *Wolk v. City of Brooklyn Ctr.*, 107 F.4th 854, 858 (8th Cir. 2024).

There are two requirements for the *Ex parte Young* exception to apply. *Filyaw v. Corsi*, 150 F.4th 936, 941 (8th Cir. 2025). First, a plaintiff must allege an ongoing violation of federal law. *Id.* And second, a plaintiff must be seeking prospective relief. *Id.* Here, Plaintiffs have failed to establish both requirements.

First, Plaintiffs have not alleged an ongoing violation of federal law sufficient to establish their entitlement to injunctive relief. The *Ex parte Young* exception does not apply to cases in which federal law was violated one time or over a period of time in the past. "The *Ex parte Young* exception is limited to 'cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past.'"

*Smith v. Reynolds*, 139 F.4th 631, 635 (8th Cir. 2025) (quoting *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986)).

Here, Plaintiffs claims relate solely to matters that happened in the past: the long-running investigations of the two bar complaints that have been dismissed. Ashford has not alleged are any pending bar complaints that are being investigated. In short, Plaintiffs have failed to allege any ongoing violation of federal law. Ashford's concerns about another complaint at some uncertain future date do not rise to an ongoing violation of federal law.

Second, Plaintiffs have failed to establish that they are seeking prospective relief. Plaintiffs' failure to establish an ongoing violation of federal law prevents them from establishing that they are seeking prospective relief. Because there are not any "ongoing violations to curtail, there are no prospective injunctions for a federal court to issue." *Filyaw*, 150 F.4th at 946. *Ex parte Young* "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

Because Plaintiffs have not alleged an ongoing violation of federal law, the *Ex Parte Young* exception does not apply. Eleventh Amendment sovereign immunity bars Plaintiffs' injunctive relief. The Court should therefore dismiss that request for relief.

### VII. The Justices and the Counsel for Discipline Defendants are entitled to qualified immunity.

If the Justices and the Counsel for Discipline Defendants are not entitled to absolute immunity, they are entitled to qualified immunity. Dismissing a case on a 12(b)(6) motion for reasons of qualified immunity is appropriate when the "immunity is established on the face of the complaint." *Sandknop v. Missouri Dep't of Corr.*, 932 F.3d 739, 742 (8th Cir. 2019). An official is entitled to qualified immunity "unless the evidence establishes (1) that a plaintiff's constitutional rights have been violated, and (2) those rights were so clearly established at the time of the violation that a reasonable officer would have known that his actions were unlawful." *Sandknop*, 932 F.3d at 742.

Nothing in the First Amended Complaint alleges a violation of Ashford's constitutional rights. The so-called causes of action are a mishmash of legal theories, making it is impossible to understand what, if any, rights have allegedly been violated. And Ashford will be unable to demonstrate that the violation of those rights were clearly established.

### VIII. Defendants in their official capacities and the State of Nebraska are not persons for purposes of Section 1983.

Ashford asserts claims brought under Section 1983 against all the Defendants. But the State of Nebraska, the Justices of the Nebraska Supreme Court in their official capacities, and the Counsel for Discipline Defendants in their official capacities are not persons within the meaning of Section 1983 and must be dismissed. Section 1983 is a vehicle for a cause of action against any "person" who,

under color of law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable …" 42 U.S.C. § 1983.

A State and its departments, boards, and officials acting in their official capacities are not persons under § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). To avoid any possible confusion about whether a State is a person under Section 1983, the Supreme Court has held that an entity with Eleventh Amendment immunity is not a person within the meaning of § 1983. *Howlett v. Rose*, 496 U.S. 356, 376 (1990).

Because Ashford is suing the Defendants in their official capacities and the State of Nebraska for monetary damages, they are not "persons" for purposes of Section 1983 claims. The Court should therefore dismiss the Defendants in their official capacities and the State of Nebraska.

**IX. The Justices lack sufficient personal involvement in the alleged constitutional violations to be liable under Section1983.**

"To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017). Section 1983 "liability is personal." *Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005). *See also Jones v. City of St. Louis*, 104 F.4th 1043, 1049 (8th Cir. 2024); *Dahl v. Webster*, 580 F.3d 730, 733 (8th Cir. 2009). In fact, a plaintiff "must allege specific facts of personal involvement in, or direct

responsibility for, a deprivation of his constitutional rights." *Jones v. City of St. Louis*, 104 F.4th 1043, 1049 (8th Cir. 2024) (quoting *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir.) cert. denied, 552 U.S. 823 (2007)). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Jones v. City of St. Louis*, 104 F.4th 1043, 1050 (8th Cir. 2024).

Ashford has named the Justices as defendants in this case. But the Amended Complaint makes only a few conclusory allegations describing each justice's involvement with the alleged deprivations. And those allegations are insufficient to show each Justice was personally involved with the alleged deprivations.

First, Ashford alleges that the "Nebraska State Supreme Court by and through their office of Counsel for Discipline acted as both prosecutor and judge in the eight straight year bar complaint." Filing 2 at ¶ 44. Second, he alleges that each justice "acted in an administrative, legislative, and executive role and not in a judicial role in investigating the Plaintiff to maliciously disbar Plaintiff for eight straight years and acted under color of law, statutes, customs and ordinances in violation of the constitution to maliciously discriminate and violate the plaintiff's constitutional rights." Filing 2 at ¶¶ 45-51. The First Amendment Complaint does not include any allegations that any Nebraska Supreme Court Justice was personally involved in the alleged deprivations of Ashford's constitutional rights.

This is a classic example of a plaintiff trying to impose vicarious liability on individuals who were not personally involved in the alleged constitutional deprivations. Ashford contends that the Nebraska Supreme Court Justices are liable under Section 1983 because they supervise the ODC. This falls far short of alleging specific facts that demonstrate the Nebraska Supreme Court Justices were personally involved in the alleged deprivations. Thus, the Court should dismiss the Justices as defendants in any Section 1983 claims.

## X. Section 1981 claims.

Ashford also brings Section 1981 claims against the Defendants. But a Section 1981 claim is not a separate claim from a Section 1983 claim in these circumstances. If a "plaintiff brings a claim pursuant to § 1981 against an individual who was acting under color of law, the claim must be asserted through § 1983." *Jones v. McNeese*, 746 F.3d 887, 896 (8th Cir. 2014). Because Ashford is bringing Section 1981 claims against individuals who were acting under color of law, any Section 1981 claims must be asserted through Section 1983. Thus, the Court should dismiss the Section 1981 claims since those claims are subsumed by the Section 1983 claims.

## XI. Ashford's malicious prosecution claim is not a Section 1983 claim.

Ashford asserts malicious prosecution claims against the Defendants. Filing 2 at 3. But malicious prosecution claims are not cognizable under Section 1983. An action for malicious prosecution by itself is not available under § 1983 because it

does not allege a constitutional injury. *Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000). Thus, Ashford's malicious prosecution claims must be dismissed to the extent that the claims are brought under Section 1983 because they fail to state a claim upon which relief may be granted.

**XII. Ashford's Title VII claims.**

Ashford has also asserted claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Title VII prohibits discrimination on the basis of race in employment. *Id.* Ashford has failed to allege that he was an employee of the State of Nebraska and has thereby failed to state a claim upon which relief can be granted.

Judge Buescher has previously ruled in one of the earlier *Ashford* cases that Ashford could not prevail on a Title VII claim because he "failed to allege that [Judge] Hendrix or the State employed him. Accordingly, any claim predicated upon Title VII is dismissed." *Ashford v. Hendrix*, No. 8:20-CV-36, 2020 WL 4365481, at *5 (D. Neb. July 30, 2020), *aff'd sub nom. Ashford v. Douglas Cnty.*, No. 8:20-CV-36, 2021 WL 2982063 (D. Neb. July 15, 2021). The same result applies here.

**XIII. Ashford's state claims.**

Ashford asserts a variety of state-law claims against the Defendants. The Court should dismiss those claims for the reasons explained below.

### A. The Nebraska Constitution

While the First Amended Complaint is confusing, it appears that Ashford is attempting to assert claims under the Nebraska Constitution. But sovereign immunity bars those claims. Nebraska's version of Section 1983—Neb. Rev. Stat. § 20-148—does not waive the State of Nebraska's sovereign immunity for claim alleging violation of the Nebraska Constitution.

Judge Buescher—in *Ashford v. Hendrix*, No. 8:20-CV-36, 2020 WL 4365481 (D. Neb. July 30, 2020)—considered this exact question. He concluded that Neb. Rev. Stat. § 20-148 is similar to Section 1983 because it provides a procedural mechanism for pursuing damages for violations of constitutional or statutory rights. *Id.*, at *5. In reaching that conclusion, he pointed out that the Nebraska Supreme Court has held that § 20-148 provides "an immediate and expeditious civil remedy to any person in Nebraska whose constitutional or statutory rights have been violated." *Id.* at *5 (quoting *Adkins v. Burlington N. Santa Fe R. Co.*, 260 Neb. 156, 159, 615 N.W.2d 469, 472 (2000) (citing Statement of Purpose, L.B. 66, Committee on Judiciary, 86th Leg., 1st Sess. (Jan. 18, 1977)). And the Nebraska Supreme Court has held § 20-148 "does not operate to waive sovereign immunity and has no application here." *Id.* at 5 (quoting *Potter v. Bd. of Regents of the Univ. of Nebraska*, 287 Neb. 732, 740 (Neb. 2014)).

### B. State tort claims

Ashford also seeks damages under the Nebraska's State Tort Claims Act ("STCA"), Neb. Rev. Stat. § 81-8,209 et seq. The STCA governs tort claims against the State. *Saylor*, 306 Neb. at 149. "[T]he STCA bars tort claims against the State, its agencies, and its employees" except as allowed under the STCA. *Davis v. State*, 297 Neb. 955, 969 (2017). It generally waives the state's tort immunity under the STCA but carves out "specified exceptions" to that waiver. *Id.*

Ashford has not alleged that he complied with the necessary prerequisites set forth in the STCA. Specifically, he has not alleged that he filed a tort claim with the State's Risk Manager. "All tort claims shall be filed with the Risk Manager." Neb. Rev. Stat. § 81-8,212. "[T]he filing requirements set forth in § 81-8,212 ... are conditions precedent to the commencement of suit." *Cole v. Isherwood*, 264 Neb. 985, 991 (2002). Because Ashford has failed to allege compliance with the necessary prerequisites to bring a tort claim against the State, he has failed to state a claim upon which relief can be granted. *Ashford v. Hendrix,* at * 4.

### C. The Counsel for Discipline Defendants are immune from liability from Plaintiffs' claims under Nebraska law.

The Defendants are also immune from liability under Nebraska law. Nebraska law provides an express grant of immunity to the Counsel for Discipline Defendants: "The Counsel for Discipline, his or her representatives, … shall be immune from suit for any conduct in the course of their official duties under these rules." Neb. Sup. Ct. R. § 3-322. Section 3-322 provides the Counsel for Discipline

Defendants with broad immunity from all claims arising from the course of their official duties. The Court should therefore dismiss all Nebraska state claims against the Counsel for Discipline Defendants.

## Conclusion

For these reasons, Defendants respectfully request that the Court grant their motion to dismiss and dismiss Plaintiff's First Amended Complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted September 28, 2026.

**HON. Jeffrey J. Funke, Chief Justice of the Nebraska Supreme Court in his official capacity and his individual capacity; HON. Stephanie F. Stacy, Justice of the Nebraska Supreme Court in her official capacity and her individual capacity; HON. Derek R. Vaughn, Justice of the Nebraska Supreme Court in his official capacity and his individual capacity; HON. William B. Cassel, Justice of the Nebraska Supreme Court in his official capacity and his individual capacity; HON. Jonathan J. Papik, Justice of the Nebraska Supreme Court in his official capacity and his individual capacity; HON. Jason M. Bergevin, Justice of the Nebraska Supreme Court in his official capacity and his individual capacity; HON. John R. Freudenberg, Justice of the Nebraska Supreme Court in his official capacity and his individual capacity; Mark A. Weber, Counsel for Discipline of the Nebraska Supreme Court, in his official capacity and his individual capacity; Kent Frobish, Assistant Counsel for Discipline of the**

**Nebraska Supreme Court, in his official capacity and individual capacity; Jarrod S. Boitnott, Assistant Counsel for Discipline of the Nebraska Supreme Court, in his official capacity and his individual capacity; State of Nebraska, Defendants.**

By: MICHAEL T. HILGERS, #24483
*Nebraska Attorney General*

By: *s/ Grant K. Dugdale*
Grant K. Dugdale, #19244
Joshua E. Dethlefsen, #24667
*Assistant Attorney General*

OFFICE OF THE ATTORNEY GENERAL
1445 K Street, Room 2115
Lincoln, Nebraska 68508
Telephone: (402) 471-2682
grant.dugdale@nebraska.gov
joshua.dethlefsen@nebraska.gov

***Attorneys for Defendants.***

**CERTIFICATE OF COMPLIANCE**

Pursuant to NECivR 7.1(d), I hereby certify that this brief is 30 pages in length and contains 6,903 words as counted by the Microsoft Word for Microsoft 365-word processing software used to generate this brief. The word count function of this software was applied to include all text, including the caption, headings, footnotes, and quotations.

By: *s/ Grant K. Dugdale*
Grant K. Dugdale, #19244
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2026, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of Nebraska, which will send notification of such filing to Plaintiff's counsel of record.

By: *s/ Grant K. Dugdale*
Grant K. Dugdale, #19244
*Assistant Attorney General*