IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

TIMOTHY L. ASHFORD and
TIMOTHY L. ASHFORD, P.C.L.L.O.,

Plaintiffs,

vs.

HON. JEFFREY J. FUNKE, Chief Justice of the Nebraska Supreme Court in his official capacity and his individual capacity, et al.,

Defendants.

8:26-CV-356
4:26-CV-3274

MEMORANDUM AND ORDER

The plaintiffs, Timothy L. Ashford and his eponymous law firm (collectively, Ashford) are suing the justices of the Nebraska Supreme Court and officials of the office of the Nebraska Supreme Court Counsel for Discipline, generally alleging that they participated in an unlawful attorney disciplinary investigation against Ashford. Ashford now moves to disqualify every judge in this district pursuant to 28 U.S.C. § 455(a), alleging racial discrimination. Filing 19.[1] The Court will deny the motion.

## BACKGROUND

### *UNITED STATES V. BASKIN*

Most of Ashford's basis for the motion is related to a criminal case in which he briefly represented the defendant—*United States v. Baskin*, case no.

[1] Ashford filed the same claims in federal and state court, but the state court case—No. 4:26-cv-3274—was removed to this Court. That case will be dismissed in an accompanying memorandum and order, so the Court cites exclusively to case no. 8:26-cv-356.

8:15-cr-313—so a brief recap of the relevant events in that case will help establish context. The defendant was facing drug charges and had been appointed counsel pursuant to the Criminal Justice Act. No. 8:16-cr-313 filing 1; filing 6. The presiding judge was the late Laurie Smith Camp, then Chief Judge, and the case was assigned to now-retired Magistrate Judge F.A. Gossett for judicial supervision.

The defendant made his initial appearance on October 22, 2015, and the case was set for trial on November 9. No. 8:16-cr-313 filing 5. Trial was continued to January 5, 2016 on the defendant's motion. No. 8:16-cr-313 filing 11; filing 12. That date was later moved to January 6. No. 8:16-cr-313 filing 20. CJA counsel filed an exhibit list and witness list on December 28, 2015, and the case appeared to be headed for trial the following week. No. 8:16-cr-313 filing 23; filing 24.

On December 29, 2015, Ashford entered an appearance for the defendant. No. 8:16-cr-313 filing 25. On the same day, Ashford filed a motion to continue, citing the need for additional time to prepare for trial. No. 8:16-cr-313 filing 26. But the Magistrate Judge denied that motion, explaining that Ashford "should have known at the time of his appearance that trial had been set in this matter since November 2, 2015." No. 8:16-cr-313 filing 27. The next day, CJA counsel filed a motion for leave to withdraw. No. 8:16-cr-313 filing 32. But the Magistrate Judge denied that motion too, explaining that

> [w]hile the Defendant has the right to retain the lawyer of his choice, the Court will deny the pending Motion to Withdraw in light of [CJA counsel]'s knowledge of the case and preparation for the trial, and will require that he serve as stand-by counsel during trial pursuant to his CJA appointment.

No. 8:16-cr-313 filing 33.

The evident purpose of that order was to try to preserve the pending trial date by requiring the lawyer who had been working on the case to remain available for consultation. But Ashford didn't see it that way. He objected to the Magistrate Judge's order denying the motion to continue, and that objection was set for hearing before Chief Judge Smith Camp. No. 8:16-cr-313 filing 34; filing 35. But the day before the hearing, Ashford also filed a motion to withdraw as attorney, accompanied by a 19-page brief repeatedly accusing the Court of racism and sharply criticizing the performance of CJA counsel. No. 8:16-cr-313 filing 38.[2]

Chief Judge Smith Camp granted Ashford's motion to withdraw without discussion, and Ashford was excused from the hearing. No. 8:16-cr-313 filing 103 at 2-3.[3] The prosecution was asked to step out a few moments later to preserve attorney-client confidentiality, and after discussion, Chief Judge Smith Camp sustained the defendant's objection to the order denying the motion to continue (both of which, remember, had been filed by Ashford) and continued the trial until March. 8:16-cr-313 filing 40; filing 103. CJA counsel

---

[2] Ashford also complained about a December 21, 2015 hearing in a different case in which Chief Judge Smith Camp had allegedly questioned Ashford's competency in court by asking his client about his performance. No. 8:16-cr-313 filing 38 at 8. It should be noted that the proceeding in question was a change of plea hearing, and that a standard part of nearly *every* change of plea hearing conducted in this district is inquiring of defendants whether they are satisfied with the performance of counsel, as part of the colloquy required by Fed. R. Crim. P. 11(b) to determine whether the defendant's plea is voluntary. No. 8:14-cr-283 filing 100.

[3] Ashford complains that he "was not allowed to speak in the federal court on the motion to withdraw." Filing 19-1 at 8. The record doesn't reflect that he asked to speak. *See* no. 8:16-cr-313 filing 103 at 2-3. And his motion was granted, so what else was there to say?

withdrew the next day and new counsel was appointed. 8:16-cr-313 filing 41; filing 44; filing 45.[4]

### REMOVAL FROM CJA PANEL

On September 9, 2016, Ashford received a letter from the Federal Public Defender informing him that the CJA Panel Selection Committee had determined that Ashford should be removed from the CJA Panel. Filing 19-2 at 2. Chief Judge Smith Camp had approved that decision on February 22. Ashford apparently sent a letter to the Federal Public Defender regarding the CJA Panel in 2022—Ashford's letter is not in the record, but the Federal Public Defender sent an August 22 letter acknowledging receipt of Ashford's letter, reiterating that Ashford's removal from the CJA Panel in 2016 had not been based on race, and advising that Ashford could complete an application for membership on the panel if he wanted to be considered. Filing 19-2 at 3. Ashford admits—and claims credit for—the fact that since his removal, "more qualified African American Attorneys have been appointed to the CJA panel." Filing 19-1 at 15-16.

### ASHFORD V. DOUGLAS COUNTY

Ashford also points to a previous case he filed against a Douglas County district court judge, among others, based on her alleged filing of a bar complaint based on his actions in a case before her in that court. *See* no. 8:20-cv-36. In dismissing that case, District Judge (now Chief Judge) Brian C. Buescher wrote the following:

---

[4] The defendant—after another change of counsel—was ultimately convicted pursuant to a guilty plea, *see* no. 8:16-cr-313 filing 111, but the remaining proceedings in that case aren't relevant to this one.

> The Court has concerns about the conduct of Ashford in repeatedly filing federal and state litigation in response to what he deemed to be an unfavorable result in an attorney's fees award and then a subsequent bar complaint arising from a probation matter in Douglas County Court. Ashford has now filed four lawsuits against a judge and various political entities. Ashford, as a lawyer who alleges that he has practiced law for twenty-six years, is well-aware of the standard of conduct required for an attorney.
>
> It is clear that Ashford has previously utilized his legal abilities to bring important matters to the forefront of discussion in our society. But this does not justify repeatedly filing what is essentially the same frivolous lawsuit in an effort to get back at a judge who gave him an unfavorable ruling and reported his conduct to the bar authorities.

No. 8:20-cv-36 filing 23 at 13. Judge Buescher also ruled on a similar motion to recuse in that case, finding that Ashford's allegations were "baseless, frivolous, unprofessional, and illogical" and that his conduct in the case "certainly does not support the notion that he has the judgment and temperament necessary to be appointed by a state or federal court to represent defendants in criminal cases where the defendant's personal liberty is at stake." No. 8:20-cv-36 filing 68 at 4.

DISCUSSION

Based on the foregoing narrative, Ashford asserts that the entire bench of this Court should be disqualified from this case pursuant to § 455(a), which provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might

reasonably be questioned." *See* filing 19-1 at 2. Essentially, Ashford argues that a reasonable person would believe the entire bench of this Court to be prejudiced against him on the basis of his race. Ashford's argument requires two leaps of logic—first, that the events he describes are sufficient to infer that *those judges* might have been prejudiced against him, and second, that any bias on the part of those judges can be imputed to the entire court. His argument fails on both points.

A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise. *United States v. Ali*, 799 F.3d 1008, 1017 (8th Cir. 2015); *Am. Prairie Constr. Co. v. Hoich*, 594 F.3d 1015, 1021 (8th Cir. 2010). The statute sets forth an objective standard for assessing a judge's duty to recuse; the question is whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case. *United States v. Melton*, 738 F.3d 903, 905 (8th Cir. 2013) (citing § 455(a)); *see also United States v. May*, 70 F.4th 1064, 1073 (8th Cir. 2023); *Hoich*, 594 F.3d at 1021. Despite the sweeping language of § 455(a), the statute does not extend literally to any kind of doubtful behavior—rather, a judge's opinions warrant recusal under § 455(a) only if they display a deep-seated favoritism or antagonism that would make fair judgment impossible. *United States v. Chastain*, 979 F.3d 586, 594 (8th Cir. 2020); *see also Ali*, 799 F.3d at 1018.

First, even the specific allegations he makes with respect to Judges Gossett, Smith Camp, and Buescher are insufficient, primarily because all of the events he described took place in the context of judicial proceedings.

> [J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (*i.e.,* apart from

> surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved.

*Liteky v. United States*, 510 U.S. 540 (1994) (citations omitted). "Almost invariably, they are proper grounds for appeal, not for recusal." *Id.*

Here, the "laundry list of 'bad acts'" Ashford recites "amount to disagreements with court rulings, which do not form a proper basis for recusal." *United States v. Roberts*, 9 F. App'x 573, 575 (8th Cir. 2001); *see also In re Fletcher*, 424 F.3d 783, 794 (8th Cir. 2005). Those rulings "merely reflect[] the court's view of cases over which it presided." *Ali*, 799 F.3d at 1018. Actions taken with respect to the CJA Panel, too, are the carrying out of *judicial* responsibilities, not acts in an extra-judicial capacity. *See In re Snyder*, 734 F.2d 334, 343 (8th Cir. 1984), *rev'd on other grounds*, 472 U.S. 634 (1985). And the opinions of those judges regarding Ashford's conduct in those cases were formed in the course of those proceedings or prior proceedings, and do not display a deep-seated favoritism or antagonism that would make fair judgment impossible. *See Ali*, 799 F.3d at 1018 (citing *Liteky*, 510 U.S. at 555).

In other words, Ashford's citations to unfavorable decisions made by other judges are unsupported by any allegations of evidence suggesting actual racial animus. And even if he had such support, there is nothing to support imputing any bias to the rest of the Court. Specifically, even if there was some reason to think that Ashford's absence[5] from the CJA panel was somehow based on his race—despite his admission that *other* African-American

[5] The Court notes that Ashford was apparently invited to apply for membership on the panel in 2022, but he doesn't allege doing so, or the outcome of any such process.

attorneys are on the panel, *see* filing 19-1 at 15-16—Ashford's claim that the entire district court bench is responsible for it represents a misunderstanding of the way in which the CJA Panel Selection Committee operates. *See* Amended Criminal Justice Act Plan for the District of Nebraska ("CJA Plan"), § VIII.

Ashford points to two other pieces of evidence supporting his arguments. The first is an affidavit from a juror in a criminal case that was tried in 2005, in which Ashford represented a defendant who was acquitted of drug charges. *See* no. 8:04-cr-274. The juror opines that Ashford is an excellent attorney who did an excellent job. Filing 19-2 at 4. The affidavit is among several exhibits Ashford offers to show that he is a capable attorney, implying that the basis for his removal from the CJA panel must be discriminatory. *See* filing 19-2.

But there are many aspects to being a CJA panel attorney that wouldn't be apparent to a juror, including but not limited to "proficiency with the federal sentencing guidelines, federal sentencing procedures, the Bail Reform Act, the Federal Rules of Criminal Procedure, and the Federal Rules of Evidence." CJA Plan, § IX(C)(3)(c). Nor does a strong performance in 2005 necessarily suggest continued strong performance in 2015, or 2025. Membership on the CJA Panel is also constrained by considerations as anodyne as keeping the panel "large enough to provide a sufficient number of experienced attorneys to handle the CJA caseload, yet small enough so that CJA panel members will receive an adequate number of appointments to maintain their proficiency in federal criminal defense work." CJA Plan, § IX(B)(2). None of that is to conclude that Ashford must be a bad lawyer. It is simply to conclude that the evidence he's provided of his competency is insufficient to leave racial discrimination as the only other explanation for his removal from the CJA panel.

Finally, Ashford has submitted an affidavit from the President of the Omaha Chapter of the NAACP, who opines that "[t]t is improper for a

Nebraska judge who sits on a federal panel of judges which have removed and banned Attorney Ashford from the CJA Panel without explanation to preside or rule on his personal case." Filing 19-2 at 39-40. This, apparently, is Ashford's effort to show that the Court's "impartiality might reasonably be questioned by the average person on the street." *See Melton*, 738 F.3d at 905.

That's not really the way that the "reasonable person" standard, common in many areas of law, is used to answer legal questions. The "reasonable person" is a hypothetical person, not an actual one, and reasonable people can often disagree. But specifically, the test here doesn't just demand an "average person on the street"—it demands an "average person on the street *who knows all the relevant facts of a case*." Even if lay opinion testimony on this issue was relevant, the affidavit Ashford has proffered contains insufficient foundation to establish that the affiant has all the relevant information about Ashford's removal from the panel, or any other allegations Ashford has made.

CONCLUSION

The allegations Ashford advances are insufficient to suggest that the undersigned—or, indeed, *any* judge of this Court—is disqualified from presiding over Ashford's case. His motion to recuse will be denied.

IT IS ORDERED that the plaintiffs' motion for recusal (filing 19) is denied.

Dated this 30th day of October, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge